Yes, there is, Your Honor. And I would just add, it's the second proceeding... That proceeding is now being tried, somewhat slowly, by the bankruptcy judge in the District of New Jersey. The second proceeding is the proceeding Fuji brought against Mr. Benjamin and his new company, who bought the assets of Jazz out of bankruptcy. That's Fuji against Relitech and Jazz and some Polytech companies. Polytech is a factory and supplier of the furniture, if you will. That proceeding is pending in front of a case in the District of New Jersey. And as far as overlap with this proceeding, Polytech is being sued for the period starting in April 2003, when they came into the picture. So Fuji is pursuing infringement litigation against Benin for the same actions, which are the subject of the civil penalty? Not against Mr. Benjamin, Your Honor. Well, yes, against the bankruptcy court. Yes. The other issue, Your Honor, in our view, and I think in the view of the Commission, the court's remand in Jazz v. ITC was in the context of a motion that Fuji had brought before the court complaining about circumvention to the Commission's orders during the penalty to stay. Jazz and others were committing acts during the period of stay that were not covered by the stay. You were asking for clarification of the scope of the exclusion order? No, we were asking for clarification for this court to take action to authorize the ITC to act without the circumvention. And in my reading of the remand in that context, and that's where the ITC took it, that it was remanded to the ITC to consider the effect of these circumventions. And if you read the paragraph, which is, I guess, the third or the last paragraph, any further proceedings? What page are you at? I'm at page . . . I guess it's 11.11, Your Honor. Oh, in the appendix? Yeah. Well, I'm not sure I have that. It's the last page of the appendix, Your Honor. It's page 11.11. It's helpful to have the appendix when you come. Well, I'm not sure this decision is in the appendix, Your Honor. It's a legal decision that could sign it. But if Your Honor wants to have a copy of the decision, I can hand it to the court. Wish to have it? Yeah. Please hand it to the Courtroom Deputy. Do you want to present your main point, Mr. Rosenthal? Yes, Your Honor. Thank you. Why do you have standing? I mean, is part of your theory that if you succeeded on this appeal that it would affect the amount of penalties? Yes, Your Honor. Whatever happens here will affect the Fuji material in several respects. First of all, in the event that there are further proceedings in the IPC, other enforcement proceedings, we've gone through two already and who knows whether there will be a third, the IPC would be likely to be bound by whatever is said. But if your theory is that it would affect the amount of penalties, there's a Supreme Court case which nobody cites called Friends of the Earth 2000 decision, which says that a private party does not have standing to challenge the refusal of an agency to impose penalties unless the effect of the imposition of the penalties would have some continuing impact on the dispute between the private parties. And since Jazz is out of business, how can there be an effect here? Well, Your Honor, Ben is part of the district court case that Your Honor elucidated that ended in 2002. But is he continuing to import cameras? He continues to control Jazz through the limitation he became CEO of. But Jazz is out of business, right? Jazz is out of business, he now has a new company named Ribitech, which he in fact imported. We imported it to the United States. Some of the cameras that were excluded by customs were exported to the East at the time of the invasion, which we think were infected with the same disease. We, in fact, had a good study to sample those cameras, and we found a fair number of infringing cameras just from what we could see. How would imposing additional penalties on Mr. Bannoon affect that issue? Your Honor, I don't think the issue is the penalty. I agree with the Governor in the sense that whatever the court does will not affect the amount of the penalty. Mr. Bannon's maximum liability was in excess of $100 million. And the commission appraised the issue and elected to assess the penalty of $16.675 million. I don't think that another million camera infringement, that $25 million infringement, is going to affect the penalty. And we're not a party to the penalty. We don't care to make that judgment. But the appeal is about the penalty. Well, Your Honor, my appeal is not about the penalty. It's not? No. My appeal is about the final punishment. I took an appeal from the order of the commission, accepting the AOA. That's like trying to appeal from part of a decision without challenging the result. You can, Your Honor. Aren't you challenging the result? I'm not challenging the amount of the penalty. No. I think that is perfectly marked. What I'm challenging is... You want some more cameras to be held to be not permissible repair. Exactly, Your Honor. And I think I have an absolute right, in fact... Well, what would the consequence of that be? Suppose we would agree with you that they should have included other cameras. You say that's not going to affect the amount of the penalty. What would it affect? It would affect the conduct of the commission and possibly the referee in terms of excluding clues under the general decision order. And it could very well affect the determination of the bankruptcy judge and perhaps Judge Hayden in the... But it basically relates to future events, not before us, right? And not decided well. The future events. Well, I think every judicial decision, its consequences are future. So it's unfair to say just before us that it relates to... But is it an advisory opinion you're asking for? Not at all, Your Honor. It was a decision of the ITC about what is and isn't an infringement. As the patent owner was interiorly affected by that decision, there's nothing advisory about that decision whatsoever. So that makes it sound as though you could appeal any statement about infringement in an ITC opinion even if it doesn't affect the penalty and it might affect some future case. Your Honor, this is hardly any statement. This is a finding that X cameras, certain cameras of certain configuration in certain ways are not infringed. Does it relate to the scope of an exclusion order? It certainly relates to the scope of the exclusion order. And I think that's where I'm coming from, Your Honor. The scope of the exclusion order has an immediate effect on Fuji because customers have to enforce the exclusion order and should take direction from whatever this Court says and the ITC says. And I think it has a material effect. But the decision below didn't purport to change the exclusion order, did it? No, but as this Court has stated in Fuji v. ITC, whatever the ITC does in enforcing the proceedings is instruction to the Customs and Border Protection without the need for amending the order, the cease and desist order or the exclusion order. The body, the piece of paper doesn't live by itself. It lives in the context of what the ITC said about how to interpret it in the area of judicial determination. And the enforcement proceedings in this section, the enforcement proceedings in what this Court said was reviewing the enforcement proceeding decisions. I think that it's unfair to say that the Commission has to amend the facts. It's been ruled by this Court today to amend the exclusion order, which the Commission has requested on several occasions, and at every turn has been rejected. I think the Commission takes a position that when they speak, they expect at least Customs servicers and enforcers to respond. I have a question. Judge Schall. I want to ask you, Mr. Horne, what exactly do you say is the nature of the error with respect to your cross-appeal on the infringement? It's not a cross-appeal. I'm sorry. It's a principal appeal. There was an issue of first impression involved with my appeal. Can it be permissible to say that the change in the product implicates different acts and different plans? And that has two ramifications. First, especially here with the first panel of this Court where we hear these issues in Jazz and the OIGC, the fine missile repair process, in terms of there's no other change in the cameras, and said that the eight steps they found to be non-existent. Excuse me. How many cameras are involved, or how many of these items are involved on your point? About a million and six, Your Honor. Okay. We're not talking about just a minimal amount of cameras. The thing that's a little troubling is that what you're saying is it's going to affect the scope of the exclusion order. You want, in effect, you say, to have the exclusion order's scope more clearly defined or changed to cover these million cameras. But the parties who might be affected by that exclusion order in the future are not here before us to argue against you. Your Honor, that is true in every enforcement proceeding. There's a limited body of people. But nonetheless, what the Commission said, Enforcement 1, the second of the two appeals to this Court, was followed by customers and should be, and I'm talking to people who are not parties. That dealt with the issue of cameras which were, by default, so-called vulnerable, where they were advertised to be not be vulnerable, they were vulnerable by the consumer. So that's always the case. In fact, in a general exclusion order, by definition, it always extends beyond the parties in front of it. The needs and values of the order have not changed. The order just says, don't infringe. Yeah, but we don't have a single person, J.S. being out of business, who is interested in the scope of the exclusion order. Your argument is solely, at this point, with the Commission as to what the scope of the exclusion order should be. The parties who may be affected by the exclusion order in the future are not here, right? No, not truly, Your Honor. Mr. Benn has made an exception to the proposition and has opposed it. He certainly is now the principal of a company engaged in the sale of single-use cameras. Well, I didn't see him raising any issues about future importations by him in a new company in his brief. He's talking about the civil penalties. No, Your Honor, I beg to differ. In his brief, he does take, especially in his reply, no, he doesn't take himself into consideration also, he supports the position of the Commission concerning the fact that the pass back and the Yeah, but he supports the position. But where does he say that what his concern is about future importation? Is that in the brief? No, Your Honor. He does not discuss future importation as an issue, right? Your Honor, he does not. I submit he doesn't have that. There are two issues. A, why does he care? And B, we know outside the record that in fact he is a potential future importer. Outside the record. Outside the record. Your Honor, I can only deal with what I have. The other aspect that merits my position, which is also very interesting, is the issue of whether or not there is exhaustion of measure plans. The panel, as you just said, gave a very narrow definition of exhaustion. They said there is exhaustion if the patent process was practiced in the United States. I think we have that position. Why don't we hear from the ITC now, and we'll save you two minutes of rebuttal time. As should be obvious to the audience, this is a very complicated case. It's been to this Court six times from various tribunals, from the Commission, from the District Court, from Customs. And it involves importation of cameras alleged to be infringing a patent under the Trade Act. It's an unusual patent case. Mr. Reese, we've let appellants have considerable extra time because they've divided their case. They represent different parties, different arguments. If you need more time, we'll give it to you. But since you're one person, and the issues aren't that numerous, I doubt that you will, but we'll see. Thank you, Judge. I'll do my very best. Judge, if I may, Judge, I spent a few moments there looking for that remand opinion, and I came into this site, and I did the same thing in the record. Your Honor, I have the confidential, and I was working from the non-confidential. The page numbers here are the same. It's A-0-2-7-0-0. You've got my ears. What is that again, Mr. Reese? I'm sorry. A-0-2-7-0-0. That was the Commission's remand opinion after the, as you recall, first Janus cases. So what happened here was that initially the Commission said these eight steps constitute impermissible reconstruction. We reversed. We said that's not true. We sent it back, and the Commission, and we expressed no opinion. I think the Commission agrees with that as to what other steps might be within the repair or reconstruction categories. And I think you would agree that it's often difficult to determine whether something's a repair or reconstruction under the case law, right? Yes. But the Commission on the remand gave no further definition as to the scope of the exclusion order. How is JAS or Benin supposed to understand as a matter of due process and a penalty proceeding? And penalty proceedings are different. How are they supposed to understand what's permitted and what's prohibited in terms of repair versus reconstruction? Well, Your Honor, I think the Federal Circuit made that black and white on the facts that were before it in the 2008 proceeding about the 2001. How did it make it black and white? It said these eight steps are permissible repair, but it didn't express an opinion on what steps might constitute impermissible reconstruction, did it? No, Your Honor. And that's where it's the one point of the opinion I'd just like to highlight. The whole other context of that opinion was that a number of Respondents, including JAS, were the very Respondents who had not come full sufficient evidence before the Commission to demonstrate what their processes were at all. No, but we're talking about notice. We're talking about notice from the Commission. These cases like GE and Chrysler in the D.C. Circuit, like the Ford opinion in our circuit, say it's a matter of due process. Before you impose a civil penalty, you must give notice to the party affected as to what is prohibited. And the question I'm asking about is how would anybody possibly know from this exclusion order what the line was between repair and reconstruction? Your Honor, as a matter, first of all, just as a matter of process, the extent issued before the Commission was the question of the circumvention orders and those referred to in the remand opinion. The Commission also suggested Yeah, but I don't think you're answering my question. Here we have an exclusion order which is framed in green. In very general terms, it just says don't infringe these patents, right? And then there are Commission opinions which give notice as to what the scope of the exclusion order is. If I'm understanding the record correctly, after our remand in the original Jazz photo, there is no Commission opinion before the penalty phase here giving anyone notice as to what the line is between permissible repair and reconstruction. Am I wrong about that? I think that I would look at it differently in terms of Well, what's the answer, what's the answer to my question first? Is there a Commission opinion giving definition to the exclusion order in that respect? I think the opinion that comes down are the subsequent opinions that we have on actual proceedings before the Commission Penalty proceedings Yeah, but before the penalty proceedings, before the conduct, was there any notice as to what the line was between repair and reconstruction so somebody could tailor their activities to comply with the order? Was there any notice? No matter what the law, where the law stood in terms of that process. Was this an issue raised by I don't mean to You're absolutely right, Your Honor, that the Commission didn't issue that as an advisory opinion. It wasn't even asked to issue an advisory opinion. Well, that's my question. Did Mr. Bennett raise this point? Your Honor, that's extraordinary. Mr. Bennett never asked for an advisory opinion. He just said he shouldn't be sanctioned as opposed to the company. Exactly. Exactly. There was never a request Clearly there was no request, but I don't read the cases as saying that he has to request a ruling from the Commission. In the course of the penalty proceeding, he's raised some due process issues. The question is whether those due process contentions encompass this problem. Mr. Reese, do you understand to raise this issue on appeal? Raising? Him to raise this issue on appeal. Issue of notice. This kind of notice with respect to the nature of the device. Scope of the exclusion notice. No, to be quite honest, I didn't understand you to raise this point when you suggested it. As I understood the appeal, Mr. Bennett says, number one, our CCB assist order, despite having a provision that says it applies to officers and agents and others, it doesn't apply to him. He basically would read that section out of the order. And then his alternative argument is that any of that, the Commission, had no authority to bind him personally in an enforcement proceeding with that order as amended against him individually in an original infringement proceeding. But I'm apparently asking you about a line of cases that you're not familiar with, but there is a case in the D.C. Circuit called Rollins. You might want to look at it, which talks about a situation where the issue hasn't been raised by the party and, therefore, the court did not address the merits of it, but it said that it's an inequitable matter. The penalty should be reduced to zero even though the issue wasn't raised. Your Honor, I guess that was not the argument raised here by Mr. Bennett. It wasn't, it wasn't an issue that we were agreeing on. I think there's a serious question as to whether he has raised this argument. But there's also a question as to what courts should do if the argument hasn't been raised, but it appears that there's a plain error in this respect. And there is a real problem of lack of notice here. And if you say due process requires that people be given notice of the line between repair and reconstruction, what the Commission did is just threw people back under the general law of repair and reconstruction and asked these people to figure out what the line was without any guidance from the Commission. I'm not sure that's permissible. I guess all I'm suggesting, Your Honor, is to draw that line. I'm excited about the hypothetical construct, to draw it with great specificity. Is it possible to know where the line is until a particular case comes up? That's the point I was just trying to make, Your Honor. Without a case before the Commission to determine on the facts whether those steps constitute repair or reconstruction, the Commission couldn't opine in the abstract. Well, it has to opine if it's going to hit people with civil penalties. I mean, I think the Commission ought to familiarize itself with the G.E. Chrysler, Ford, line of cases. You cannot impose penalties on people unless you give them notice as to what's prohibited by the exclusion order. You don't have to write it in the exclusion order itself, but you have to give notice in the underlying opinions as to what's prohibited. And none of    Chrysler or Ford or line of cases. And I don't mean to take up more time with it because it's a real question as to whether this issue was properly raised in this case at all. But that is a serious issue.  you.  BERNSTEIN. Your Honor, I think you don't have any more answer   apparently. Do you want to mention any other issues as an appellee? MR. BERNSTEIN. Yes, thank you. Again, as I suggested, I think the arguments that were made to the scope of the exclusion order and in addition the order applies and whether we would still operate under an organic statute and to submit the answer both is exactly yes. With respect to the exclusion  I  it would  appropriate to  a comment on that. I think it would be appropriate to make a comment on that. I think it    to make a comment on that. And that states expressly that the provisions of the order shall apply to the respondents and the guests. Thank you. We have questions. You want to talk about Fuji standing? Yes. Your honor. With respect to Fuji standing we've taken a position that Fuji doesn't have standing in the wait period that its position  not affect the outcome of the order. It's an issue. Which is what? The penalty? Which is the penalty order. Exactly. It's the levying of the penalty. So effectively Fuji is attacking a subsidiary client. They say the scope of the exclusion order for the future will be affected by our ruling on the point that they're raising. What's your response to that? They agree that this isn't going to affect the penalty. I don't believe that that's sufficient to give rise to a statement. Again, there's no adverse effect on Fuji. In addition, the council will discuss regarding whether jabs will be afforded in the future. There's a fundamental point that just as our decisions are not binding in other federal court litigation, they're actually not binding. There's quite a series of vast things on the customs. So I would submit that Fuji's attack is really, if you will, a collateral attack on underlying findings that I think Fuji makes because they might benefit in future litigation. And that's what we learned principally about bankruptcy litigation and how it is a collateral attack. So I would  that Fuji's attack is really a collateral attack. There's a series of vast things on the customs. I would submit that Fuji's attack is really a              attack. And that's what we learned principally about bankruptcy litigation and how it is a collateral attack. And that's what we learned principally  bankruptcy litigation and how it is a collateral attack. I would like to address this item and I for a new season to issue  and a